IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PENDLETON DIVISION

**RAINA WEST**,                                                    Case No.  3:14-CV-01764-SU

        Plaintiff,                                           **OPINION AND ORDER**

v.

**CAROLYN W. COLVIN,** Commissioner,
Social Security Administration,

        Defendant.

_____

SULLIVAN, United States Magistrate Judge:

        Plaintiff Raina West brings this action pursuant to the Social Security Act ("Act") to obtain

judicial review from a final decision of the Commissioner of Social Security ("Commissioner").

The Commissioner denied plaintiff's application for Title II disability insurance benefits ("DIB") and

Title XVI supplemental security income ("SSI") under the Act.  The Court has jurisdiction pursuant

to 42 U.S.C. §§ 405(g) & 1383(c)(3), and the parties have consented to adjudication by a Magistrate

Judge.  For the reasons set forth below, the Court affirms the Commissioner's decision and dismisses

the case.

Page 1 - OPINION AND ORDER

## PROCEDURAL BACKGROUND

On March 18, 2011, plaintiff protectively filed applications for both DIB and SSI benefits. Tr., at 18.  The Social Security Administration denied her applications initially and upon reconsideration.  Tr., at 18, 106-07.  On January 28, 2013, an administrative law judge ("ALJ") conducted a hearing, at which plaintiff testified and was represented by counsel.  Tr., at 18, 37.  A vocational expert also testified at the hearing.  Tr., at 18, 37.  On April 11, 2013, the ALJ issued a decision finding the plaintiff not disabled within the meaning of the Act and denying her benefits. Tr., at 18-29.  After the Appeals Council denied plaintiff request for review, the ALJ's decision became the final decision of the Commissioner.  Pl.'s Br., at 2.  Plaintiff seeks judicial review from this Court, requesting the Court reverse the ALJ's decision and remand the case for the payment of benefits.  Pl.'s Br., at 1, 10.

## STATEMENT OF FACTS

Plaintiff was born in 1974 and was 38 years old at time of hearing.  Tr., at 41, 52.  She alleges her disability began August 5, 2008, when she was 33 years old.  Tr., at 18, 176, 182.  Plaintiff states that she cannot work due to pain and physical limitations resulting primarily from osteoarthritis in her right hip.  Pl.'s Br., at 2; Tr., at 42, 210.  Plaintiff also suffers limitations associated with degenerative joint disease in her knees, degenerative disc disease, carpal tunnel syndrome in her right hand, hypertension, and morbid obesity.  Pl.'s Br., at 2; Tr., at 20.  Plaintiff has a GED and career training as a medical assistant.  Tr., at 203, 253.  The alleged onset date of her disability coincides with plaintiff's final day of work as a quality supervisor at a plasma center.  Tr., at 202-03.  Plaintiff testified at her hearing that she left the job by "mutual agreement" when her physical limitations made it too difficult for her to perform the work.  Tr., at 42-43.  However, in her written application

for benefits, plaintiff stated she was "let go" due to a "conflict with another employee."  Tr., at 202.  The record shows plaintiff has seen multiple doctors for her hip, knee, and back pain,  and has been repeatedly prescribed vicodin and percocet, narcotic pain medications.  Tr., at 308, 281-82, 297-99, 320-23, 333-35, 350-53, 370-71, 421-22, 432-33, 518-19, 566-67, 645-46.   On at least four occasions, doctors have discontinued or declined to prescribe plaintiff those medications due to misuse and noncompliance with doctor's orders.  Tr., at 623-29 (Dr. Heybach); 264-65 (Drs. Menda and Pham); 322, 327, 617 (Dr. Pham); 373-74 (Dr. Adler).   Plaintiff has switched doctors multiple times seeking the narcotic pain medications.[1]  *Id*.  In support of her claim for benefits, plaintiff submitted medical opinions to the ALJ which were done in close proximity to the time of the hearing from a  physician and from a consultative examining doctor.  Tr., at 256, 258-59, 698-705.

At the hearing, plaintiff testified that she could perform daily activities such as driving,

---

[1]  Specifically, the records indicate that plaintiff's physician, Dr. Adam Adler, ceased prescribing plaintiff vicodin in June 2009, because plaintiff used up 2-3 months worth of vicodin in one month and would not comply with his requests she see a physical therapist.  Tr., at 370-74, 367.  Two months later, plaintiff left Dr. Adler's care and began seeing a new doctor, Dr. Thanh Long Pham, who eventually prescribed plaintiff percocet for her pain.  Tr., at 354-57.  In December 2010, Dr. Pham discontinued prescribing plaintiff narcotics after she tested positive for marijuana and negative for the percocet he had prescribed for her.  Tr., at 617, 264, 623.  About one week later, plaintiff saw Dr. Debbie Heybach, requested narcotic pain medication, and became "upset" when Dr. Heybach offered only non-narcotic options.  Tr., at 627-28.  The doctor reported the patient was "upset and wants to know what to do to get narcotics."  Tr., at 628.  Several days later, plaintiff saw Dr. Shivali Menda and told her she left Dr. Pham's care, because she wanted a female doctor.  Tr., at 264.  She told Dr. Menda that on a scale of 1 to 10, she was experiencing level 10 pain and only narcotics would help.  Tr., at 264.  When Dr. Menda declined to prescribe narcotics but offered to find other solutions, plaintiff requested "to find another clinic which would be able to prescribe narcotics and left."  Tr., at 265.  In March 2011, Dr. Heybach again declined plaintiff's request for narcotic pain medication, citing plaintiff's history of escalating use, her violation of her pain contract with Dr. Pham, and plaintiff's failure to disclose marijuana and methadone use.  Tr., at 623.  The following month, plaintiff entered the care of Dr. Christina Oliver, who began prescribing plaintiff percocet and whose clinic was still prescribing the medication at the time of the hearing.  Tr., at 608-11, 653, 675, 52-53.

grocery shopping, and household chores but needed frequent rest breaks. Tr. 51-53. Plaintiff testified that her hip would "give[] out" and she would fall down 9-10 times a week while attempting to walk. Tr., at 52. For years, doctors have urged and referred plaintiff to see physical therapists but plaintiff has only followed up on a single assessment. Tr., at 559-65 (PT appt.); 374, 381, 385, 419-20 (Dr. Adler); 349 (Dr. Ensminger); 308, 346 (Dr. Pham); 623 (Dr. Heybach). Plaintiff's doctors have also prescribed a cane and wrist splints, but she has not used them consistently. Tr., at 52, 47, 271, 349, 388, 398-99. Since her alleged onset date, plaintiff has collected unemployment benefits and has searched for employment. Tr. 47, 355, 572. At the hearing, plaintiff reported that she lived with her boyfriend and attended community college classes three days a week as part of the college's funeral director training program. Tr., at 46-47, 609, 704.

STANDARD OF REVIEW

In order to obtain social security disability benefits, a claimant must demonstrate that she is disabled under the law. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). The Social Security Act defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

An ALJ determines whether a claimant is disabled based on a five-step sequential analysis. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 416.920(a), 404.1520(a)(4). If at any point in the evaluation, the ALJ finds the claimant is not disabled, the ALJ denies benefits and need not proceed to the next step. First, the ALJ evaluates whether the claimant is engaged in "substantial gainful activity." *Yuckert*, 482 U.S. at 140; 20 C.F.R. §§ 416.920(a), 404.1520(a)(4). If so, the claimant is not disabled. Otherwise, the analysis proceeds to the second step. At the

second step, the ALJ determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. §§ 416.920(a), 404.1520(a)(4). If the claimant lacks a severe impairment, the ALJ will find she is not disabled. At step three, the ALJ resolves whether the claimant's impairments, either singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 416.920(a), 404.1520(a)(4). If so, the claimant is presumptively disabled. *Yuckert*, 482 U.S. at 141. If not, the ALJ determines claimant's residual functional capacity ("RFC"), which assesses claimant's abilities, given her limitations, to meet various demands in a work setting. 20 C.F.R. §§ 416.945(a)(1), 404.1545(a)(1). At step four, based on claimant's RFC, the ALJ determines whether the claimant can still perform "past relevant work." 20 C.F.R. §§ 416.920(a), 404.1520(a)(4). If the claimant can work, she is not disabled. If she cannot perform past relevant work, the burden of proof shifts from the claimant to the ALJ. *Howard*, 782 F.2d at 1486. At step five, the ALJ must establish that the claimant can perform other work that exists in significant numbers in the national and local economy. *Id*.; *Yuckert*, 482 U.S. at 141-42; 20 C.F.R. §§ 416.920(a), 404.1520(a)(4). If the ALJ meets this burden, the ALJ may find the claimant not disabled and deny her benefits. 20 C.F.R. §§ 416.966, 404.1566.

Once a decision is final, a claimant may seek judicial review, as plaintiff has done here. The Social Security Act empowers the district court to affirm, modify, or remand a decision for payment of benefits or for further proceedings. 42 U.S.C. §§ 405(g), 1383(c)(3). The ALJ, not the district court, is responsible for assessing credibility, resolving conflicts in medical testimony, and for

construing ambiguities in the record. *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014); *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Accordingly, the "court may not substitute [its] judgment for that of the ALJ." *Garrison*, 759 F.3d at 1010. If the ALJ bases his decision on proper legal standards and it is supported by substantial evidence in the record, the court must affirm the decision. *Id.*, at 1009; *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance" of the evidence. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007); *see Richardson v. Perales*, 402 U.S. 389, 401 (1971). It "is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter*, 504 F.3d at 1035. "[W]hen evidence is susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999).

## THE ALJ'S FINDINGS

In this case, the ALJ followed the five-step evaluation process outlined above, and found plaintiff was not disabled. At the first step, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date. Tr., at 20. At step two, the ALJ determined that plaintiff had the following severe impairments: morbid obesity, degenerative joint disease of the right hip and knees, degenerative disc disease, right carpal tunnel syndrome, and hypertension. Tr., at 20. At step three, the ALJ determined that plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. Tr., at 22-23. Finding that plaintiff did not establish presumptive disability at step three, the ALJ continued the sequential evaluation process to determine how plaintiff's impairments affected her ability to work. Tr., at 23. The ALJ

determined that plaintiff had the RFC to perform "less than the full range of sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a)." Tr., at 23.  Specifically, the ALJ found plaintiff could occasionally crouch, kneel, and climb ramps and stairs, but she could never climb ladders, ropes, and scaffolds or operate foot controls with her right leg. Tr., at 23.  The ALJ also determined that plaintiff would need to use a cane to walk longer distances or along uneven terrain. Tr., at 23. Plaintiff could no more than frequently finger and handle objects with her right hand and must avoid exposure to noxious fumes and smells.  Tr., at 23.

At step four, based on this RFC and the testimony of a vocational expert, the ALJ found the plaintiff unable to perform any of her past relevant work.  Tr., at 28.  At step five, the ALJ determined that plaintiff, despite her impairments, could perform other jobs that existed in significant numbers in the national and local economy.  Tr., at 28.  The ALJ gave the examples of telephone sales representative, document sorter, and charge account clerk.  Tr., at 28-29.  The ALJ concluded that plaintiff was not disabled under the Act.  Tr., at 29.

## DISCUSSION

Plaintiff seeks reversal of the ALJ's decision, arguing the ALJ erred in determining plaintiff's RFC.  Pl.'s Br., at 6, 9-10.  Plaintiff argues the ALJ improperly rejected two doctors' medical opinions, which, if properly considered, would have required the ALJ to find the plaintiff disabled. Pl.'s Br., at 4, 6, 9-10.  First, plaintiff asserts that the ALJ improperly rejected the opinion of consultative examining physician, Dr. John Ellison.  Plaintiff argues that if the ALJ had properly credited Dr. Ellison's opinion, the ALJ would have been required to find plaintiff disabled as this

opinion  shows plaintiff cannot sit, stand, or walk for a full eight-hour work day.  Pl.'s Br., at 6.

Plaintiff also asserts that the ALJ erred by rejecting two opinions from treating physician, Dr. Anne

Weinsoft, who opined that plaintiff would miss two full days of work in an average month and could

not use her right hand at all for work.  Pl.'s Br., at 7, 9-10.   The Commissioner argues the ALJ

properly weighed the medical opinions and provided valid reasons for according them little weight.

Def.'s Br., at 4.

　　　　Social Security Regulations define medical opinions as statements from physicians and other

acceptable medical sources "that reflect judgments about the nature and severity" of a claimant's

impairments, including symptoms, diagnoses, and claimant's physical or mental restrictions.  20

C.F.R. §§ 416.927(a)(2), 404.1527(a)(2).  An ALJ must consider medical opinions submitted by a

claimant, but the ALJ determines what weight to give them.  20 C.F.R. §§ 416.927(c); 404.1527(c).

The ALJ must consider the following factors in weighing a medical opinion:  (1) the physician's

examining relationship with the claimant; (2) the treatment relationship with the claimant; (3) the

physician's explanation and evidentiary support for his opinion; and (4) how consistent the opinion

is with the record as a whole.[2]  20 C.F.R. §§  416.927(c); 404.1527(c).  Regarding the treatment and

examination factors, ALJs generally accord greater deference to the opinions of treating physicians

compared with those of non-treating physicians.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995),

---

　　　　[2]  Where relevant, the ALJ must also consider whether a specialist is opining about an
area of her specialty and any additional factors specifically raised by a claimant or of which the
ALJ is aware that tend to support or contradict the opinion.  20 C.F.R. §§  416.927(c);
404.1527(c).  Neither side raises these factors nor are they relevant in assessing the opinions at
issue.

*as amended* (Apr. 9, 1996); *Garrison*, 759 F.3d at 1012.  Similarly, the opinion of a physician who has examined the claimant generally carries greater weight than that of a physician who has not done so.  *Id.*  However, in considering all the factors, an ALJ may discount the opinions of treating or examining physicians.  Where no other medical provider has contradicted the opinion of a physician who has treated or examined the claimant, an ALJ must furnish "clear and convincing" reasons for rejecting the opinion.  *Lester*, 81 F.3d at 830.  Even if the opinion of a treating or examining physician is contradicted by another doctor, the ALJ may not reject the opinion without providing "specific and legitimate reasons that are supported by substantial evidence in the record." *Id.*, at 830-31. The Ninth Circuit has held specific, legitimate reasons for rejecting a medical opinion to include: reliance on the claimant's discredited subjective complaints, inconsistency with medical records, inconsistency with a claimant's testimony, and inconsistency with a claimant's daily activities. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008); *Valentine v. Comm'r Soc. Sec. Admin*., 574 F.3d 685, 693 (9th Cir. 2009); *Morgan,* 169 F.3d 595 at 600*; Tompkins v. Colvin*, 2015 WL 2412105, at *3 (D. Or. May 20, 2015).  "The ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Garrison*, 759 F.3d at 1012.

### A. Dr. Ellison's Opinion

The Court first considers the appropriate standard for assessing the ALJ's reasoning regarding Dr. Ellison's opinion.  Here, it is undisputed that Dr. Ellison was an examining physician but not a treating physician.  Def.'s Br., at 4-5; Pl.'s Br., at 4. Where the opinion of an examining

physician is contradicted by another doctor, the ALJ may reject the opinion only after providing "specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830-31; *see* Pl.'s Br., at 5. Otherwise, the standard is stricter, and the ALJ must provide "clear and convincing reasons." *Id.* Here, Dr. Ellison's opinion conflicted with the opinions of two non-examining state agency consulting physicians, Drs. Robert Hughes and Martin Kehrli. Tr., at 27, 74-76, 99-101. In his opinion, Dr. Ellison stated that plaintiff could not sit for longer than 30 minutes at a time and for no longer than four hours in an eight-hour period. Tr., at 707. He also opined that plaintiff could only stand for two hours in an eight-hour period and for only 15 minutes at a time. Tr., at 707. Dr. Ellison also indicated that plaintiff could only walk for one hour in an eight-hour period and for no more than 10 minutes before taking a break. Tr., at 707. The remainder of the time, plaintiff would need to recline. Tr., at 707. On the other hand, Drs. Hughes and Kehrli assessed that plaintiff could sit for a total of six hours, stand for two hours, and walk for two hours in an eight-hour day, taking normal breaks. Tr., at 27, 74, 99. Because the two state doctor opinions contradict Dr. Ellison's opinion, the ALJ needed only provide "specific and legitimate" reasons for discounting Dr. Ellison's opinion. However, even if the Court were to apply the stricter "clear and convincing" standard, the Court finds the ALJ's reasons for discounting the opinion would be sufficient.

The ALJ analyzed the factors required by regulations, and his reasons for discounting the Ellison opinion stem from this analysis. First, regarding the relationship factor, the ALJ properly acknowledged that Dr. Ellison had examined the plaintiff. Tr., at 26-27. The ALJ also considered

the "supportability" factor, how well Dr. Ellison "present[ed] relevant evidence to support an opinion, particularly medical signs and laboratory findings." 20 C.F.R. §§ 416.927(c)(3); 404.1527(c)(3). "The better an explanation a source provides for an opinion," the more weight an ALJ should give that opinion. *Id.* When "evaluating conflicting medical opinions, an ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005); *see Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Miller v. Colvin*, 2014 WL 183824, at *13 (D. Or. Jan. 14, 2014). Here, Dr. Ellison included minimal commentary or explanation within the opinion itself; however, his examination notes accompanied it. Tr., at 703-11. The ALJ noted that the clinical findings in the examination notes did not support Dr. Ellison's terse opinion about plaintiff's limitations. Tr., at 26-27. For example, Dr. Ellison opined that plaintiff would not be able to sit for longer than 30 minutes at a time, but his examination notes stated that plaintiff appeared "healthy" and "not uncomfortable" through the appointment. Tr., at 26-27, 704, 707. The examination found plaintiff had a normal gait and no arthritic stigmata or pain on manipulation of her hip. Tr., at 26-27, 704. Plaintiff was able to walk in tandem and on her heels and toes. Tr., at 26-27, 704. Nonetheless, Dr. Ellison wrote in his opinion that plaintiff would not be able to stand for more than 15 minutes at a time or walk for more than 10 minutes. Tr., at 707. Dr. Ellison's notes state that plaintiff had less grip strength in her right hand but could otherwise reach, grip, release, and manipulate objects with her right arm and complete other tests. Tr., at 704. Yet, his opinion stated that plaintiff would be unable to reach her right hand and manipulate objects more than occasionally

while working.[3]   Tr., at 708.   Courts have found similar discrepancies between a doctor's examination notes and his resulting opinion constituted both a specific, legitimate reason and a "clear and convincing reason for not relying on the doctor's opinion."   *see, e.g., Bayliss*, 427 F.3d 1211 at 1216 (doctor's notes from the examination contradicted doctor's opinion on claimant's ability to walk and stand); *Weetman v. Sullivan,* 877 F.2d 20, 23 (9th Cir. 1989)(inconsistencies between doctor's medical notes and his opinion were a "clear and convincing" reason for rejecting the opinion); *Miller*, 2014 WL 183824, at *11 ("An ALJ may properly discount a physician opinion based upon discrepancies between the opinion and the physician's treatment notes").

The ALJ noted the inconsistencies and found Dr. Ellison's opinion was based largely on the plaintiff's statements to him, rather than any objective findings.  Tr., at 27.  Plaintiff argues this determination was improper because the ALJ substituted his subjective opinion for that of medical expert.  Pl.'s Br., at 5-6.  However, courts have repeatedly held that an ALJ may discount a medical opinion when it is largely based on a claimant's allegations of her symptoms and limitations and those allegations are not credible.  *Bayliss*, 427 F.3d at 1217; *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989); *Tonapetyan,* 242 F.3d at 1149; *Wood v. Colvin*, 2015 WL 4426212, at *3 (D. Or. July 20, 2015); *Miller*, 2014 WL 183824, at *11.  Earlier in his decision, the ALJ had determined that plaintiff's statements about her capabilities were not credible.  Tr., at 24-26.  The credibility determination was based on substantial evidence, and plaintiff does not contest that determination.

---

[3]  "Occasionally" is defined here as "very little to one-third of the time."  Tr., at 706.

Rather, plaintiff argues the ALJ failed to take into account that Dr. Ellison may have based his opinion on plaintiff's "objective" medical records. Pl.'s Br., at 5-6. However, plaintiff notably failed to provide Dr. Ellison with more than a small sample of her medical records, even though the examination followed the hearing and plaintiff presumably had access to all of them. Tr., at 703; Pl.'s Br., at 5. It is unclear why only records from plaintiff's chiropractor and her more recent treatments with one particular doctor were made available. Tr., at 703; Pl.'s Br., at 5. Plaintiff claims this limited selection of records constituted an "objective" and "longitudinal picture of Plaintiff's conditions upon which [Dr. Ellison] could base an opinion." Pl.'s Br., at 5-6. The Court disagrees. Furthermore, although Dr. Ellison notes that he reviewed the records, he does not indicate anywhere in his examination notes or opinion that he relied on them to form his opinion of plaintiff's symptoms or limitations. Tr., at 703-11.

The ALJ found that not only did Dr. Ellison's own examination notes not support his opinion, the opinion itself appeared hastily written. "His straight line marking all the way down the blocks for recommended limitations to the right hand suggests he gave no serious thought to the claimant's actual limitations." Tr., at 27. Although plaintiff might disagree with this assessment, it is not unreasonable and an ALJ "is entitled to draw inferences logically flowing from the evidence." *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982); *see Tommasetti*, 533 F.3d at 1040 ("The ALJ may rely on ordinary techniques of credibility evaluation"). Where the evidence is susceptible to multiple rational interpretations, the Court defers to the ALJ's conclusions. *Morgan*, 169 F.3d at 601. The Court finds the ALJ properly considered the adequacy of Dr.

Ellison's explanation and support for his opinion and based on this analysis, gave specific, legitimate, clear, and convincing reasons for rejecting the opinion.

The ALJ also considered the opinion's consistency with the record, noting that plaintiff's activities of daily living supported the state doctors' opinions, which directly contradict Dr. Ellison's opinion. Tr., at 27. The ALJ noted that plaintiff was able to attend two-hour classes, drive, shop, and tend to her own personal care needs independently, according to medical records and her own testimony. Tr., at 24, 27, 46, 51-53, 609, 645, 692. The ALJ also cited examples from the record of plaintiff engaging in more strenuous activities including roller-skating, participating in a bar fight, parenting a former fiancee's infant child, going out to eat, and traveling for weeks at a time. Tr., at 24; 518 (roller-skating); 320 (bar fight); 212, 359 (eating out); 366, 370 (parenting fiancee's infant child); 341 (holiday travel). "Inconsistency between a physician's opinion and the claimant's daily activities suffices as a specific and legitimate reason for discounting the physician's opinion if supported by substantial evidence from the record as a whole." *Lindquist v. Colvin*, 588 F. App'x 544, 546 (9th Cir. 2014)(citing *Morgan*, 169 F.3d at 600-02).

In rejecting Dr. Ellison's opinion, the ALJ analyzed relevant factors and found neither the record nor the doctor's own findings supported his opinion. Substantial evidence in the record supported the ALJ's reasons, and they were both "specific and legitimate" and "clear and convincing."

**B. Dr. Weinsoft's Opinion**

As for Dr. Weinsoft's opinions, the Court first considers the proper standard for evaluating

the weight the ALJ accorded them.  Because Dr. Weinsoft's opinion about plaintiff's abilities with her hands conflicted with other medical opinions, the ALJ only needed to provide "specific and legitimate reasons" for rejecting them.   Like Dr. Ellison's opinion, Dr. Weinsoft's opinions were contradicted by the opinions of the state consulting doctors.  Dr. Weinsoft's opinions also conflicted with Dr. Ellison's examination findings and his opinion.  For instance, Dr. Weinsoft opined that plaintiff was "never" capable of using her right hand to handle, finger, or feel objects or to reach overhead or forward as part of any employment.  Tr., at 701-02.  She also stated that plaintiff could never reach overhead with her left hand and could only reach forward or handle, finger, or feel objects with her left hand occasionally.  Tr., at 702.  Drs. Hughes and Kehrli found no such limitations. Tr., at 27, 74-76, 99-101.  Dr. Ellison's examination found plaintiff could reach, grip, and manipulate objects with both hands although she had reduced gripping strength in her right hand.  Tr., at 26, 704.   Contrary to Dr. Weinsoft's opinion, Dr. Ellison opined that plaintiff could occasionally reach, handle, finger, feel, push and pull with her right hand and could frequently perform those tasks with her left hand.  Tr., at 708.

Dr. Weinsoft also opined that plaintiff would miss two full workdays a month at a "simple and routine sedentary job," because of episodes of severe pain and plaintiff's propensity to fall ill due to obesity and lung issues.  Tr., at 700.  However, no other medical provider opined on this subject although arguably the state doctors' opinions do not support this statement.  Nevertheless, the Court treats this portion of Dr. Weinsoft's opinion as uncontradicted and thus the ALJ was required to provide "clear and convincing" reasons for discounting it.  That said, the precise standard

has little impact here as the Court finds the ALJ's reasons for rejecting Dr. Weinsoft's opinions meet both the "specific and legitimate" standard and the stricter "clear and convincing" standard.

When weighing the opinion of a treating physician, social security regulations require an ALJ to evaluate whether it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and consistent with other substantial evidence in the record. 20 C.F.R. §§ 416.927(c)(2); 404.1527(c)(2). If so, the treating physician's opinion is accorded controlling weight. *Id.* If not, the ALJ must consider the "length of the treatment relationship and the frequency of examination" as well as the "nature and extent of the treatment relationship." *Id.* The longer a doctor has seen a patient, the more likely she will "have obtained a longitudinal picture" and full understanding of the impairments. *Id.* In addition, the ALJ must still consider the other relevant factors such as "the amount of relevant evidence that supports the opinion and the quality of the explanation provided" and "the consistency of the medical opinion with the record as a whole." *Orn v. Astrue,* 495 F.3d 625, 631 (9th Cir. 2007); *see* 20 C.F.R. §§ 416.927(c); 404.1527(c). An ALJ may reject a treating physician's opinion when it conflicts with independent clinical findings or is inconsistent with the claimant's reported activities. *Dunn v. Colvin,* 2015 WL 505265, at *5 (D. Or. Feb. 3, 2015) (*citing Orn*, 495 F.3d 625, 631-32 (9th Cir. 2007) and *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001)).

The ALJ evaluated Dr. Weinsoft's opinion and found it was not well-supported by medically acceptable clinical and laboratory diagnostic techniques. The ALJ noted that the doctor's first opinion, dated January 2013, declined to assess plaintiff's RFC, including plaintiff's ability to reach

and manipulate objects with her hands.  Tr., at 26, 698-99.  Dr. Weinsoft wrote on the opinion form that she was "[n]ot able to assess."  Tr., at 26, 698.  However, a few weeks later and after the ALJ hearing, plaintiff sought and Dr. Weinsoft provided an opinion of plaintiff's ability to reach and manipulate objects with her hands.  Tr., at 26, 701-02.  The record does not show that Dr. Weinsoft examined plaintiff again prior to this second opinion, and thus it is unclear why the doctor was then able to opine on the subject.  The ALJ also noted that Dr. Weinsoft's opinion was not supported by Dr. Ellison's clinical examination, which "revealed largely normal findings" regarding plaintiff's abilities to use her hands.  Tr., at 26.  The ALJ also found Dr. Weinsoft's opinions were not consistent with substantial evidence in the record.  Rather, he found that plaintiff's activities of daily living and other self-reported activities such as roller-skating and holiday travel supported the state doctors' opinions, opinions that flatly contradicted Dr. Weinsoft's opinions.  Tr., at 24, 27.  Because clinical findings and the record did not support Dr. Weinsoft's opinions, the regulations did not require ALJ to assign them controlling weight.

As required by the regulations, the ALJ proceeded to consider the length, frequency, nature and extent of Dr. Weinsoft's treatment and examination of plaintiff.  *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  The ALJ noted that Dr. Weinsoft identified herself in the opinion as the plaintiff's "primary care physician" for about one year.  Tr., at 26, 698.  However, the ALJ noted contradictory evidence in the record showing that another doctor in Dr. Weinsoft's clinic was plaintiff's primary care physician, and Dr. Weinsoft only treated and examined plaintiff on a couple

of occasions.[4]   Tr., at 26, 607, 648.   The  ALJ also considered other evidence about the nature of

plaintiff's treatment relationship with Dr. Weinsoft.   The ALJ made note that "Dr. Weinsoft's clinic

apparently not only prescribed the claimant narcotics against the advice of several other treatment

providers, they apparently continue to prescribe despite several notations that they do not believe it

is a good treatment strategy." Tr., at 26.   The record supports this finding by the ALJ.   Tr., at 25,

607, 610-11, 651, 653, 48, 53.   Plaintiff argues that the ALJ was not permitted to consider Dr.

Weinsoft's choice of treatments in weighing her medical opinion.   Pl.'s Br., at 9.   However, the

Ninth Circuit has repeatedly held that ALJs may consider a variety of evidence that bears on a

doctor's credibility, although it may not always be dispositive.   *See, e.g., Saelee v. Chater*, 94 F.3d

520, 522-23 (9th Cir. 1996), *as amended* (Aug. 12, 1996) (physician's opinion discredited and

deemed "untrustworthy" because it was obtained for the hearing, conflicted with his treatment notes,

and was worded ambiguously to aid appellant); *Reddick v. Chater*, 157 F.3d 715, 726 (9th Cir. 1998)

("Evidence of the circumstances under which [a medical opinion] was obtained and its consistency

with other records, reports, or findings could . . . form a legitimate basis for evaluating the reliability

of the report"); *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996) ("We have held the source

of a referral to be relevant where there is no objective medical basis for the opinion, and where there

---

[4] The record includes notes from only two appointments with Dr. Weinsoft, one in April 2011 and the other in June of that year.   Tr., at 607, 648.   Moreover, those examination notes list plaintiff's "primary care provider" as Dr. Christina Oliver, and not Dr. Weinsoft.   Tr., at 607, 648.   In addition, the record contains evidence of numerous appointments with Dr. Oliver during the one year in which Dr. Weinsoft purports to have been plaintiff's primary care physician.   *See, e.g.,* Tr., at 644, 649, 651, 652.   Those notes also list Dr. Oliver as the primary care physician. Dr. Oliver has not submitted a medical opinion.

is evidence of actual improprieties on the part of the doctor whose report the ALJ chooses to reject"). Regardless, the Court need not determine the permissibility of this reason, because the ALJ cites several other valid reasons for rejecting Dr. Weinsoft's opinion.[5]  Not only did the ALJ account for Dr. Weinsoft's limited treatment relationship with plaintiff, he found plaintiff's activities of daily living did not support her assessment of plaintiff's abilities but instead supported the contrary opinions of the state doctors.  Tr., at 24, 27.  As for the supportability of Dr. Weinsoft's opinions, the ALJ found that the doctor's two opinions were internally inconsistent as noted above and not supported by clinical findings.  Tr., at 26.  Accordingly, the Court finds the ALJ properly analyzed relevant factors and provided clear and convincing reasons for discounting Dr. Weinsoft's opinion. The Court finds the ALJ did not err in according little weight to the opinions of Drs. Weinsoft and Ellison. Moreover, he supported his conclusions with substantial evidence from the record.

//

//

//

//

//

---

[5]  Even if the Court were to find the ALJ erred by considering Dr. Weinsoft's treatment decisions, the error would be harmless.  The Ninth Circuit applies harmless error principles apply in the Social Security Act context. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (citing *Stout v. Commissioner*, 454 F.3d 1050, 1054-55 (9th Cir. 2006)).  An ALJ's "error is harmless so long as there remains substantial evidence supporting the ALJ's decision and the error does not negate the validity of the ALJ's ultimate conclusion."  *Molina*, 674 F.3d at 1115.

## CONCLUSION

For the reasons stated above, the Commissioner's final decision is AFFIRMED and this action is DISMISSED.

IT IS SO ORDERED.

DATED this the 18th day of August, 2015.


_____
                                                          /s/ Patricia Sullivan
                                                          Patricia Sullivan
                                              United States Magistrate Judge


Page 20 - OPINION AND ORDER